IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARYANN G. QUILALA & MICHAEL W. WATKINS, | ) ) | CIV. NO. 15-00080 JMS-BMK |
| | ) | ORDER (1) GRANTING |
| Plaintiffs, | ) | DEFENDANTS' MOTIONS TO |
| | ) | DISMISS FOR LACK OF PERSONAL |
| vs. | ) | JURISDICTION, DOC. NOS. 15 & 40; |
| | ) | AND (2) IN LIEU OF DISMISSAL, |
| SUN POWER, ET AL., | ) | TRANSFERRING ACTION TO THE |
| | ) | EASTERN DISTRICT OF |
| Defendants. | ) | CALIFORNIA |
| _____ | ) | |

**<u>ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR
LACK OF PERSONAL JURISDICTION, DOC. NOS. 15 & 40; AND (2) IN
LIEU OF DISMISSAL, TRANSFERRING ACTION TO THE EASTERN
DISTRICT OF CALIFORNIA</u>**

## I.  INTRODUCTION

Plaintiffs MaryAnn Quilala ("Quilala") and Michael Watkins

("Watkins") (collectively, "Plaintiffs"), proceeding pro se, bring this action

asserting that a panoply of Defendants subjected them to physical and emotional

injury when Defendants violated building safety codes, threatened and intimidated

Watkins when he attempted to report these violations, fired Watkins for reporting

violations, and endangered the public by refusing to rectify the violations.[1]

---

[1] The Amended Complaint identifies Defendants as follows:  Sun Power Corporation
("SunPower"); Tom H. Werner ("Werner"), individually and in his official capacity as CEO of

(continued...)

Currently before the court are Motions to Dismiss for Lack of Personal Jurisdiction brought by (1) Defendants SunPower, Werner, MatriScope, Tadlock, Merced County, and Clary (collectively, "SunPower  Defendants") and (2) Defendants Mortenson and Gunkel (collectively, "Mortenson Defendants"). SunPower Defendants and Mortenson Defendants argue, among other things, that Plaintiffs have failed to establish that this court has personal jurisdiction over them.  Based on the following, the court agrees and GRANTS the Motions to Dismiss, and in lieu of dismissal, the court TRANSFERS the action to the Eastern District of California.

## II.  BACKGROUND

A.    **Factual Background**

 *1.    Plaintiffs' Factual Allegations*

Although the Amended Complaint is confusing and vague in many respects, construing it liberally, the court deduces the factual allegations.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however

---

[1](...continued)
Sun Power Corporation; Matriscope Engineering Laboratories, Inc. ("MatriScope"); Robert V. Tadlock ("Tadlock"), individually and in his official capacity as CEO of MatriScope Engineering Laboratories Inc.; Mortenson Construction ("Mortenson"); Tom Gunkel ("Gunkel"), individually and in his official capacity as CEO of Mortenson Construction; Merced County; and Lydia Clary ("Clary"), individually and in her official capacity as Building Official of Merced County (collectively, "Defendants").

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyer.") (internal citation omitted).

At an unspecified time and place in Merced County, California, SunPower and its employees used wire that was unsuitable for structural applications, and Watkins recorded this in his capacity as an inspector.  Doc. No. 13-1, Am. Compl. ¶ 19.  As a result, SunPower attempted to "cover up" this improper usage by demanding that Watkins remove the information from his report, and then removing Watkins from the inspection job when he refused.  *Id.* MatriScope allegedly participated in this "cover up" because it provided SunPower with welding procedures related to the improper wire installations.  *Id.* Additionally, "as a result of harassment by both SunPower and Mortenson," a Mortenson employee purposefully stepped on Watkins' toe, injuring it.  *Id.* ¶ 22. Another Mortenson employee allegedly threatened Watkins by remarking "back where I'm from we barry [sic] inspectors in the concrete foundation."  *Id.*

Finally, the Amended Complaint asserts that the inspector's (presumably Watkins') reports were sent to the Building Official (presumably Clary, the Deputy Building Official for Merced County), and that the Building Official did nothing to protect the public from the misconduct noted in Watkins' reports.  *Id.* ¶ 24.  The Amended Complaint includes no allegations as to Quilala.

### 2.     *Defendants' Contacts with Hawaii*

As to SunPower Defendants, the Amended Complaint asserts that:

(1) SunPower is a corporation in San Jose, California, and Werner is its CEO, *id.*

¶¶ 7-8; (2) MatriScope is "a company in Sacramento, California main office [sic],"

and Tadlock is its CEO, *id.* ¶¶ 9-10; and (3) Clary is an employee of Merced

County, and Merced County "is, and at all times material . . . is the jurisdiction

liable." *Id.* ¶¶ 13-14.  With respect to the Mortenson Defendants, the Amended

Complaint provides that Mortenson is "a company in Minneapolis, [Minnesota]

main office," and Gunkel is its CEO.  *Id.* ¶¶ 11-12.

Defendants assert that all the allegations of the Amended Complaint

arise from conduct that occurred in California.  Doc. No. 15-1, SunPower Mot. at

4-5; Doc. No. 40-1, Mortenson Mot. at 2.  SunPower Defendants specifically

assert that the contract referenced in the Amended Complaint is a Subconsulting

Agreement ("Agreement") between MatriScope and Quality Professional

Industries, Inc. ("QPI") for inspection work in California.[2]  Doc. No. 15-2,

Tadlock Decl. ¶¶ 5-6.

According to Clary, she is the Deputy Building Official for Merced

---

[2] The Agreement is signed by Watkins as a "Special Inspector" for QPI.  Doc. No. 15-4, SunPower Ex. 2 at 3.

4

County, which is located in California.  Doc. No. 15-6, Clary Decl. ¶ 3.  Clary

asserts that all events alleged in the Amended Complaint "if true, would have

occurred in Merced County, California and pertain to a project still under

construction in Merced County."  *Id.* ¶ 4.  Clary further asserts she is a citizen of

California with no connection to Hawaii.  *Id.* ¶ 5.

According to Tadlock, the CEO of MatriScope, MatriScope is a

California company with its principal place of business in California.  Doc. No.

15-2, Tadlock Decl. ¶ 3.  Tadlock further asserts that "MatriScope has never

conducted business in Hawaii," and that Tadlock himself is a citizen of California

with no connection to Hawaii.  *Id.* ¶¶ 9-10.

Werner, the CEO of SunPower, asserts that SunPower is a Delaware

corporation with its principal place of business in California and that "SunPower

. . . is not registered to conduct business in Hawai'i."  Doc. No. 15-5, Werner Decl.

¶¶ 3-4.  Werner further asserts that he is a citizen of California with no connection

to Hawaii.  *Id.* ¶ 5.

Finally, according to Krista Twesme ("Twesme"), Mortenson's Vice

President of Risk Management, Mortenson's headquarters are located in

Minnesota and its CEO is Gunkel.  Doc. No. 40-2, Twesme Decl. ¶¶ 2-4.

Additionally, "Mortenson has occasionally engaged in projects and transacted

business within the state of Hawaii, although not since May 1, 2015." *Id.* ¶ 6.

Gunkel has visited Hawaii to attend meetings related to that business, but was not

a resident of Hawaii during "all times relevant" to this action. *Id.* ¶¶ 5, 7.

## B.   Procedural Background

On March 16, 2015, Quilala and Watkins filed this action in the name

of QPI, Doc. No. 1, Compl. ¶¶ 1-2, and on April 3, 2015, Quilala and Watkins

filed an Amended Complaint in their own names after the court notified them that

a company must be represented by counsel.  Doc. No. 13, Am. Compl.  The

Amended Complaint asserts federal jurisdiction based on both federal question

and diversity of citizenship, and alleges claims based on breach of contract,

"physical injury," "mental anguish," and "torts against public safety."  *Id.*

On May 7, 2015, SunPower Defendants filed a Motion to Dismiss for

Lack of Personal Jurisdiction ("SunPower Motion").  Doc. No. 15.  On June 12,

2015, Plaintiffs filed an Opposition to the SunPower Motion, Doc. No. 30, and

SunPower Defendants filed a Reply on July 6, 2015.  Doc. No. 32.  In the

meantime, although Mortenson Defendants had previously filed a joinder to the

SunPower Motion, Doc. No. 38, Mortenson Defendants filed their own Motion to

Dismiss for Lack of Personal Jurisdiction ("Mortenson Motion") on July 24, 2015.

Doc. No. 40.

On July 27, 2012, by agreement of the parties, the court struck Mortenson Defendants' Motion for Joinder as untimely.  Doc. No. 41.  The court then ordered further briefing on Mortenson Defendants' Motion and heard argument on the SunPower Motion.  *Id.*

On August 10, 2015, Plaintiffs filed an Opposition to the Mortenson Motion, Doc. No. 43, and on August 17, 2015, Mortenson Defendants filed a Reply, Doc. No. 45.  Pursuant to Local Rule 7.2(d), the court determines the Mortenson Motion without a hearing.

## III.  <u>STANDARD OF REVIEW</u>

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Dole Foods Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  "However, this showing requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).  While the plaintiff cannot "simply rest on the bare allegations of its complaint . . . uncontroverted allegations in the complaint must be taken as true," and all disputed facts must be resolved in favor of the plaintiff.

*Id.* (citation and quotation signals omitted).

## IV.  DISCUSSION

SunPower Defendants and Mortenson Defendants, making special appearances to contest personal jurisdiction, argue in their respective Motions that Plaintiffs have failed to establish either general or specific jurisdiction over them.[3] Doc. No. 15-1, SunPower Mot. at 4-5; Doc. No. 40-1, Mortenson Mot. at 2-3. Based on the following, the court agrees.

### A.      General Jurisdiction

#### 1.      Legal Framework

Personal jurisdiction over an out-of-state defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate due process.  *See, e.g., Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996).  Hawaii's long-arm statute, Hawaii Revised Statutes ("HRS") § 634-35, extends to the full extent permitted by the Constitution.  *Cowan v. First Ins. Co.*, 61 Haw. 644, 649 n.4, 608 P.2d 394, 399 n.4 (1980).  The court thus focuses on whether due process principles permit the

---

[3] Mortenson Defendants also argue that the Amended Complaint fails to state a claim upon which relief can be granted, and seek dismissal pursuant to Rule 12(b)(6).  Doc. No. 40-1, Mortenson Mot. at 2 n.2; *see also id.* at 5-6.  Defendants make this argument in wholly conclusory fashion; but in any event, the court need not address it where Plaintiffs fail to establish personal jurisdiction over Defendants.

exercise of personal jurisdiction over a defendant, *i.e.*, whether the defendant "has 'certain minimum contacts' with the relevant forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Menken*, 503 F.3d at 1056 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (some quotation marks omitted).

"General jurisdiction . . . permits a court to hear 'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum." *Ranza v. Nike, Inc.*, --- F.3d ----, 2015 WL 4282986, at *4 (9th Cir. July 16, 2015) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). General jurisdiction over a corporation is typically appropriate in its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citation omitted).[4]

---

[4] Although *Daimler*, *Goodyear*, and *Ranza* discuss and apply the general jurisdiction framework to corporations that reside outside the United States, the Supreme Court has defined "foreign corporation" in the personal jurisdiction context to be any out-of-state corporation, not solely one that is foreign to the United States. *See Goodyear*, 131 S. Ct. at 2851 ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotation marks omitted). As a result, courts have applied the framework outlined above in determining general jurisdiction over domestic, out-of-state corporations. *See, e.g.*, *Kipp v. Ski Enter. Corp. of Wis.*,

(continued...)

"[A] plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza*, 2015 WL 4282986 at *4 (citation omitted). Those contacts must be "constant and pervasive," and business contacts cannot establish general jurisdiction "unless they are 'so continuous and systematic as to render [the defendant corporation] essentially at home in the forum State.'" *Id.* (citing *Daimler*, 134 S. Ct. at 761); *see also Lightfoot v. Cendant Mortg. Corp.*, 769 F.3d 681, 689 (9th Cir. 2014) (applying *Daimler* and *Goodyear*, and noting that "[a] corporation is subject to general jurisdiction only where it is 'essentially at home'").

## 2. *Application*

SunPower Defendants and Mortenson Defendants argue that the Amended Complaint fails to establish that their minimum contacts, if any, support general jurisdiction. The court agrees.

The Amended Complaint includes no allegations establishing that either SunPower Defendants' or Mortenson Defendants' contacts with Hawaii are "so continuous and systematic as to render [them] essentially at home in

---

[4](...continued)
*Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (noting that *Daimler* and *Goodyear* "require more than the 'substantial, continuous, and systematic course of business' that was once thought [sufficient]" under earlier precedent, and applying framework to domestic corporation).

[Hawaii]." *Daimler*, 134 S. Ct. at 761.  Further, the Declarations submitted by Defendants establish the lack of sufficient contacts with Hawaii that would support general jurisdiction.  *See* Doc. No. 15-2, Tadlock Decl. ¶¶ 3, 5-10; Doc. No. 15-5, Werner Decl. ¶¶ 3-5; Doc. No. 15-6, Clary Decl. ¶¶ 3-5; Doc. No. 40-2, Twesme Decl. ¶¶ 6-7.  Indeed, the only contacts with Hawaii admitted by *any* Defendant is Mortenson "has occasionally engaged in projects and transacted business [in] Hawaii," and Gunkel has visited Hawaii in connection with that business.  Doc. No. 40-2, Twesme Decl. ¶¶ 6-7.  These contacts, however, are not sufficiently "continuous and systematic" or "constant and pervasive" to support the exercise of general jurisdiction.  *Daimler*, 134 S. Ct. at 761.

In Opposition, Plaintiffs have presented no facts establishing a basis for general jurisdiction over SunPower Defendants or Mortenson Defendants.  In fact, the *only* evidence Plaintiffs present to the court regarding any Defendant's contacts with Hawaii is a March 22, 2011 news article stating that SunPower planned to build a solar farm in Hawaii.  Doc. No. 30-1, Pls.' Ex. A.  This article does not address any of the other Defendants, and in any event, it does not establish that SunPower itself currently has any contacts in Hawaii, let alone contacts that are "constant and pervasive" or "so continuous and systematic" as to

11

support the exercise of general jurisdiction.[5]  *See Ranza,* 2015 WL 4282986 at *4.

Rather, viewing this article in a light most favorable to Plaintiffs, it suggests at

most that at one time, several years ago, SunPower was contemplating doing some

business in Hawaii.  In other words, it says nothing about SunPower's actual

business in Hawaii.

      The court therefore finds that Plaintiffs have failed to carry their

burden of establishing that the court has general jurisdiction over any of the

Defendants.

## B.  Specific Jurisdiction

### *1.  Legal Framework*

      "[S]pecific jurisdiction exists when a case 'aris[es] out of or relate[s]

to the defendant's contacts with the forum.'"  *Ranza*, 2015 WL 4282986 at *4

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8

(1984)).  Jurisdiction is "'specific' to the case before the court," *id*., because it is

based upon a relationship between "the forum and the underlying controversy . . .

activity [and/or] occurrence that takes place in the forum State and is therefore

---

[5] In Reply, SunPower Defendants argue that Plaintiffs failed to authenticate the Exhibits attached to their Opposition and, as a result, the court should disregard them.  Doc. No. 32, SunPower Reply at 3.  The court need not address this objection -- Plaintiffs are pro se, and considering the Exhibits does not impact the court's ultimate decision.

subject to the State's regulation," *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks omitted) -- *i.e.*, the plaintiff's cause of action *must* be related to the forum state.

The court conducts a three-part inquiry to determine whether "minimum contacts" are established for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Menken*, 503 F.3d at 1057 (quoting *Schwarzenegger*, 374 F.3d at 802).

The court's analysis of the first prong depends upon the nature of the plaintiff's claims.  For contract claims, the court applies a "'purposeful availment' analysis and ask[s] whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802).  "Merely 'random, fortuitous, or attenuated' contacts are not sufficient" to establish minimum

contacts with the forum state; rather, a "defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Id.* (citations omitted).

For tort claims, the court applies a "'purposeful direction' test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* (citations omitted). Under the "effects" test, a defendant has purposefully directed their activities at the forum state if the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

"The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Menken*, 503 F.3d at 1056 (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation omitted). All three prongs must be satisfied before the court can exercise specific jurisdiction over a nonresident defendant. *Doe v. Am. Nat'l Red*

14

*Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997); *Omeluk v. Langsten Slip &*

*Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

###    2.    *Application*

SunPower Defendants argue that Plaintiffs have failed to meet their

burden as to the first two prongs of the specific jurisdiction analysis and, even if

Plaintiffs could meet this burden, it would be unreasonable to subject SunPower

Defendants to litigation in Hawaii.  Similarly, Mortenson Defendants argue their

contacts with Hawaii are insufficient to support specific jurisdiction.  Considering

the three-part inquiry, the court agrees.

###    a.    *Purposeful direction or purposeful availment*

As to Plaintiffs' claims, it is unclear which claims Plaintiffs assert

against which Defendants, or even whether those claims sound in contract or tort.

Indeed, it is difficult to discern what Plaintiffs' claims actually are, and the court's

specific jurisdiction inquiry depends on the type of claim.  But the court need not

resolve these ambiguities -- whether the court construes their claims as contract or

tort, Plaintiffs fail to satisfy the first prong of the specific jurisdiction test.

To the extent Plaintiffs assert a breach of contract claim, that claim

arises from a contract formed and executed in California, between MatriScope -- a

California company -- and Plaintiffs' company, QPI.  Doc. No. 15-4, SunPower

Ex. 2.  All the events in question occurred in the state of California.  Doc. No.

15-1, SunPower Mot. at 5; Doc. No. 15-2, Tadlock Decl. ¶ 5; Doc. No. 15-6, Clary

Decl. ¶ 4.  And the Amended Complaint does not allege "affirmative conduct" of

any kind which could have "allow[ed] or promote[d] the transaction of business

within [Hawaii]" by any of the Defendants.  *See Picot*, 780 F.3d at 1212 (citations

omitted).

        As to Plaintiffs' alleged tort claims, the Amended Complaint asserts

no facts establishing that any acts were "expressly aimed" at Hawaii.  Indeed,

aside from declaring Plaintiffs' residence in Hawaii at the time this suit was filed,

Doc. No. 13-1, Am. Compl. ¶ 6, Hawaii is not referenced in the Amended

Complaint at all, and SunPower Defendants disclaim any contacts with Hawaii,

Doc. No. 15-1, SunPower Mot. at 2-3; Doc. No. 15-2, Tadlock Decl. ¶¶ 3, 9-10;

Doc. No. 15-5, Werner Decl. ¶¶ 3-5; Doc. No. 15-6, Clary Decl. ¶¶ 3-5.

As to Mortenson Defendants, although they do have some contacts with Hawaii,

Doc. No. 40-2, Twesme Decl. ¶¶ 5-7, these contacts are not the basis of Plaintiffs'

claims in this action.  Instead, all of the relevant events alleged in the Amended

Complaint ocurred in California.  The Amended Complaint also fails to show that

Plaintiffs' harm was suffered in Hawaii, let alone that Mortenson Defendants

knew their acts would cause harm likely to be suffered in Hawaii.

In opposition, Plaintiffs assert that "if it can be shown that Sun Power [sic] has contacts with the state of Hawaii this court is the proper venue for all the defendants linked to them."  Doc. No. 30, Pls.' Opp'n at 2; *see also* Doc. No. 43, Pls.' Opp'n to Mortenson Defs. at 2-3.  This is incorrect.  Venue aside, Plaintiffs must establish that the court has personal jurisdiction over each of the defendants.  *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("[T]he parties' relationships with each other may be significant in evaluating their ties to the forum.  The requirements of *International Shoe*, however, must be met as to each defendant over whom a . . . court exercises jurisdiction.").  And in any event, the Amended Complaint fails to establish jurisdiction over SunPower.

In further opposition, Plaintiffs argue that SunPower is "doing business . . . in Hawaii" by building a solar farm, doing "installations," "selling to clients such as [the Hawaiian Electric Company]," advertising, and acquiring companies.  Doc. No. 30, Pls.' Opp'n at 5, 7, 9.  Plaintiffs, however, fail to present any specific facts to support these allegations.  These sweeping assertions are too vague to establish either purposeful availment or purposeful direction.  The only evidence presented to establish personal jurisdiction is the news article attached to Plaintiffs' Opposition -- which, again, suggests only that SunPower contemplated doing business in Hawaii several years ago.  This is not enough to establish that

17

SunPower has the requisite "minimum contacts" with Hawaii to support specific jurisdiction.

The court therefore finds that Plaintiffs have failed to carry their burden of on the first prong of the specific jurisdiction analysis.

        *b.*     *Forum-related activities*

Plaintiffs have also failed to satisfy the second prong of the specific jurisdiction analysis.  Again, all of the events underlying Plaintiffs' claims occurred in California and, as already discussed, the Amended Complaint fails to show that SunPower Defendants have any Hawaii contacts at all.[6]  Further, although Mortenson Defendants concede that they do have contacts with Hawaii, there is no indication in the Amended Complaint that the injuries allegedly suffered by Plaintiffs "[arose] out of or relate[d] to [Defendants'] forum-related activities." *Menken*, 503 F.3d at 1057 (citation omitted).  As a result, all of Plaintiffs' claims appear to arise out of, and relate to, Defendants' contacts and activities in California -- not Hawaii.

_____

[6]  The fact that SunPower Defendants are allegedly committing the same types of acts "in Hawaii as elsewhere," *see* Doc. No. 30, Pls.' Opp'n at 9, is irrelevant.  Such an allegation does not establish that the *specific* acts that are the basis for this action happened as a result of, or are related to, Defendants' contacts with Hawaii.

c.     *Reasonableness*

Even if Plaintiffs had satisfied the first and second prongs of the

specific jurisdiction test (they did not), the third prong also supports a lack of

personal jurisdiction.  When evaluating the reasonableness prong of the specific

jurisdiction test, the court must balance seven factors:

> (1) the extent of the defendant's purposeful interjection
> into the forum state's affairs; (2) the burden on the
> defendant of defending in the forum; (3) the extent of
> conflict with the sovereignty of the defendants' state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence of an
> alternative forum.

*Menken*, 503 F.3d at 1058.

This is a case about events that occurred in California during a

California construction project -- Defendants's purposeful interjection into

Hawaii's affairs is minimal, and Hawaii has little interest in adjudicating a

California dispute.  Hawaii does not appear to be important to Plaintiffs' interests

in convenient and effective relief.  Further, most of the parties appear to be in

California.[7]  Indeed, most (if not all) of the witnesses and evidence needed to

---

[7]  Although the Amended Complaint asserts that Plaintiffs "are individuals in Waipahu, [Hawaii] on the Island of Oahu," Doc. No. 13-1, Am. Compl. ¶ 6, Plaintiffs' June 18, 2015

(continued...)

prove or disprove Plaintiffs' claims will likely be found in California.  As a result, Defendants (and potentially Plaintiffs) could be burdened with significant expense and inconvenience if forced to litigate in Hawaii.  A cursory examination of the reasonableness factors suggests that most of them favor Defendants, and that it would be unreasonable to assert specific jurisdiction over any of them.

## C.      Transfer Versus Dismissal

In the event the court finds a lack of personal jurisdiction over Defendants, Plaintiffs request that the court transfer the case "to a federal district court in California near Merced County."  *See* Doc. No. 43, at 3.

Pursuant to 28 U.S.C. § 1631, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed[.]"  *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (Transfer is permitted "however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").  A district court may transfer a case if: "(1) the transferee court would have been able to exercise its jurisdiction

---

[7](...continued)
Notice of Change of Address indicates that they have moved back to California, Doc. No. 31.

on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008).

The court finds that transfer of this action to the Eastern District of California is appropriate. First, the Eastern District of California would have been able to exercise jurisdiction on the date this action was filed because diversity jurisdiction exists between the parties and the events occurred in Merced County, which is within the Eastern District of California. Second, as explained above, the court lacks personal jurisdiction over the Defendants. Finally, transfer serves the interests of justice because "normally dismissal of an action that could have been brought elsewhere is time-consuming and justice-defeating." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (citation omitted).

## V.  CONCLUSION

For the reasons set forth above, the court GRANTS the Motions to Dismiss for Lack of Personal Jurisdiction, and in lieu of dismissal, the court

///

///

///

///

ORDERS the Clerk of Court to transfer this action to the Eastern District of

California.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 20, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Quilala et al. v. Sun Power et al.*, Civ. No. 15-00080 JMS-BMK, Order (1) Granting Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Doc. Nos. 15 & 40; and (2) in Lieu of Dismissal, Transferring Action to the Eastern District of California